UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| KIMBERLY F. BROWN, | ) | CASE NO. 1:05 CV 2904 |
| | ) | |
| Plaintiff, | ) | JUDGE ANN ALDRICH |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| CUYAHOGA COUNTY | ) | AND ORDER |
| BOARD OF ELECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On December 12, 2005, pro se plaintiff Kimberly F. Brown filed the above-captioned action against the Cuyahoga County Board of Elections, Robert T. Bennett, Edward Coaxsum, Sally D. Florkiewicz, Loree K. Soggs, Michael Vu, Gwendolyn Dillingham, and Brent Lawler. In the complaint, plaintiff alleges she was unfairly prohibited from appearing on the ballot in the Cleveland mayoral primary election. She seeks monetary damages in an amount " not less than $5,000,000.00."

On January 17, 2006, Ms. Brown was notified that her complaint, as written, failed to state a claim upon which relief could be granted. She was ordered to amend her complaint to set forth a cognizable claim for relief within fifteen (15) days from the date of the order. She was further notified that if a legally sufficient amended complaint was not filed within the time

permitted, this action would be dismissed. Catz v. Chalker, 142 F.3d 279 (6th Cir. 1998); Tingler v. Marshall, 716 F.2d 1109, 1112 (6th Cir. 1983). Ms. Brown filed an amended complaint on January 26, 2006. This amended complaint also fails to state a legally sufficient claim upon which relief can be granted. For the reasons set forth below, this action is dismissed.

## *Background*

On August 25, 2005, Ms. Brown filed a petition to be included as a Cleveland mayoral candidate on the October 4, 2005 primary election ballot. For her petition to be valid, she needed to collect a total of 3,000 signatures from registered Cleveland voters. She contends she submitted 3,193 signatures. The Cuyahoga County Board of Elections ("the Board") declared that she had submitted only 2,996 signatures. Of those signatures, the Board found that only 1,330 were valid, rendering her petition insufficient by 1,670 signatures. Ms. Brown contests the accuracy of this signature count stating that her "new voter registration cards were not entered in the system." (Am. Compl. at 3.) The signatures that corresponded with these cards were therefore coded as "not registered." (Am. Compl. at 3.) She also claims that the defendants failed to "check numerous pages of submitted petitions for completion and accuracy." (Am. Compl. at 3.)

Ms. Brown further disputes that she was properly notified by the Board of the deficiency. She initially states that she received notice of the problems on September 1, 2005. (Am. Compl. at 1.) She then states she "was not notified of the status of the petitions." (Am. Compl. at 3.) She alleges thereafter that she was "notified of the status of her petitions (ten days later) on Thursday September 1, 2005... [in] a voice mail...left on plaintiff's telephone by Brent Lawler." (Am. Compl. at 13-14.) She contends that the City Charter requires the Board to notify a candidate of an insufficiency in the petition within ten days after the petition is filed. She alleges

that "Acknowledgment of Petition Filing Rules" provide that a candidate be notified by telephone regarding the insufficiency of a petition. If the candidate has no telephone, the Board of Elections will send a notification by certified mail. The candidate will then have five days to file supplemental petitions. Ms. Brown alleges that, apparently in addition to the telephone call, the Board attempted to notify her of the insufficiency by mailing the information to her. She contends that the package was sent to the wrong address. Ms. Brown's petition was up for consideration at the Board Meeting on Tuesday September 6, 2005 and she appeared to raise her objections to accuracy of the signature count. She indicates she was told her petition did not contain the requisite number of valid signatures and that she could not have the additional five days to supplement the petition because September 6, 2005 was the registration deadline for the October primary. Ms. Brown alleges, without explanation, that "On Tuesday September 6, 2005 defendants et al., added additional candidates to the ballot during this Board Hearing."[1] (Am. Compl. at 4.) She was excluded from the ballot.

    Ms. Brown asserts four causes of action. First, she states that the defendants falsely and fraudulently stated to her that her petition was deficient by 1,670 signatures, that she received

---

[1] Ms. Brown appears to be implying that other candidates were permitted to amend their petitions and appear on the ballot while she was told that September 6, 2005 was the deadline. The official record of this meeting indicates that four candidates were added to the ballot for the North Randall City Council for the general election on November 8, 2005, and one candidate was added to the ballot for the Bay Village City Council for the general election on November 8, 2005. The registration date for the general election was October 11, 2005. Furthermore, while the Board reviewed the petitions of 15 candidates at this hearing, only two, Mr. William Hill and Ms. Brown, were candidates for the Cleveland mayoral primary on October 4, 2005. Both of the candidates were excluded from the primary ballot due to an insufficient number of signatures. See http://www.boe.cuyahogacounty.us/boe/PDF/agenda/090605.pdf

notice of the defects in her petition, and that she could not receive the "five day rule." Her second cause of action for abuse of process is similar to the first, and claims the defendants committed these acts to fix the outcome of the 2005 mayoral primary. She asserts civil conspiracy as her third cause of action contending that the defendants "concealed viable information from plaintiff making it absolutely impossible for her to make the primary ballot." (Compl. at 9.) Finally, she asserts that the defendants discriminated against her on the basis of her race and her gender.

### *Analysis*

Although Ms. Brown includes four causes of action in her complaint, only her third cause of action for civil conspiracy and her fourth cause of action for discrimination could be construed to arise under federal law. In each of these claims, Ms. Brown states that the defendants violated her constitutional rights. Because the Constitution does not directly provide for damages, Ms. Brown must proceed under one of the civil rights statutes which authorizes an award of damages for alleged constitutional violations. Sanders v. Prentice-Hall Corp. Sys, 178 F.3d 1296 (6th Cir. 1999). As no other statutory provision appears to present an even arguably viable vehicle for the assertion of plaintiff's claims, the court construes these claims as arising under 42 U.S.C. § 1983.

### *42 U.S.C. § 1983*

To establish a prima facie case under 42 U.S.C. § 1983, Ms. Brown must assert that a person acting under color of state law deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981). Under this framework, an individual defendant can be held liable for damages only if the plaintiff clearly alleges that the defendant was personally involved in the activities which form the basis of

4

the alleged unconstitutional behavior. <u>Rizzo v. Goode</u>, 423 U.S. 362, 371 (1976); <u>Mullins v. Hainesworth</u>, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). In this case, Ms. Brown's complaint failed to allege with any specificity any factual connection between the actions challenged and the named defendants. Bare and conclusory allegations that a defendant personally deprived the plaintiff of constitutional or statutory rights are insufficient. <u>See</u> <u>Hall v. United States</u>, 704 F.2d 246, 251 (6th Cir.1983). In fact, she identifies the defendants collectively as "either Board Members, Directors and or Managers for Cuyahoga County Board of Elections." (Am. Compl. at 8.) She alleges that Brent Lawler left a voice mail message for her and Michael Vu "acted on behalf of Cuyahoga County Board of Elections and committed negative acts as he provided false and misleading statements to plaintiff." (Am. Compl. at 8-9.) The remainder of the allegations are described as being committed by "defendants et al." Ms. Brown makes no other attempt to identify the defendants individually or suggest in which, if any, of the described conduct the defendant personally participated. The complaint simply contains no facts which reasonably associate these defendants to any of the claims set forth by plaintiff. Ms. Brown's federal claims against Robert T. Bennett, Edward Coaxsum, Sally D. Florkiewicz, Loree K. Soggs, Michael Vu, Gwendolyn Dillingham, and Brent Lawler are dismissed.

Ms. Brown's federal claims against the Board of Elections are also without merit. As an initial matter, it is not clear whether the Board of Elections is an arm of the state, or a "political subdivision." If the Board of Election is an arm of the state, it is immune from suit for damages. State and federal governments have long possessed immunity from suit in state or federal courts. <u>Alden v. Maine</u>, 527 U.S. 706, 713 (1999). The federal government's immunity is not found in any one provision of the Constitution, but rather "is derived by implication" from the

nature of sovereignty itself.  Keifer & Keifer v. Reconstruction Fin. Corp., 306 U.S. 381, 388 (1939); Ernst v. Rising, No. 02-2287, 2005 WL 2757534, slip op. at 3-4 (6th Cir. Oct. 26, 2005). For the states, that immunity is supported by the Eleventh Amendment to the United States Constitution. Alden, 527 U.S. at 713-14 (stating that "any doubt regarding the constitutional role of the States as sovereign entities is removed by the Tenth Amendment.")  The states' immunity from suits in federal court applies to claims against a state by citizens of the same state as well as to claims against a state by citizens of another state.  See Alden, 527 U.S. at 728; Barton v. Summers, 293 F.3d 944, 948 (6th Cir. 2002). The Eleventh Amendment is an absolute bar to the imposition of liability upon state agencies.  Bouquett v. Clemmer, 626 F. Supp. 46, 48 (S.D. Ohio 1985).

If the Board of Elections is considered a political subdivision, Ms. Brown has not stated a claim against this entity under § 1983.  As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a respondeat superior theory of liability. See Monell v. Department of Soc. Servs., 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." Id. at 690; DePiero v. City of Macedonia, 180 F.3d 770, 786 (6th Cir. 1999).  Furthermore, for municipal liability, there must be an "affirmative link between the policy and the particular constitutional violation alleged." Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). The claimant has the burden of proof for

establishing the existence of an unconstitutional policy and demonstrating the link between the policy and the alleged injuries at issue. Bennett v. City of Eastpointe, 410 F.3d 810 (6th Cir. 2005). The complaint contains nothing beyond Ms. Brown's conclusory allegations of conspiracy and discrimination to reasonably suggest that the actions of the Board of Elections employees were part of some official policy or custom to keep African American women off of the ballot.  Her federal law claims against the Board of Elections must therefore be dismissed.

### *State Law Claims*

Finally, the claims asserted by Ms. Brown in her first two causes of action arise, if at all, under Ohio law.  Pendent jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial.  United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966). However, the court may exercise discretion in hearing state law matters. Id. at 726.  In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. Id. Having dismissed plaintiff's federal law claims, this court declines jurisdiction to hear her state law claims.

*Conclusion*

Accordingly, Ms. Brown's federal law claims are dismissed with prejudice. Her claims for violations of Ohio law are dismissed without prejudice. Further, the court certifies pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

  s/Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

Dated: March 15, 2006

---

[2]  28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken <u>in forma pauperis</u> if the trial court certifies that it is not taken in good faith.

8